2004 SD 88

**STATE of South Dakota, Plaintiff
and Appellee,**

v.

**Wendy Kay PHAIR, Defendant
and Appellant.**

**No. 23031.**

Supreme Court of South Dakota.

Considered on Briefs on June 1, 2004.

Decided July 7, 2004.

Lawrence E. Long, Attorney General, Jeffery J. Tronvold, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Traci Smith, Office of Minnehaha County, Public Defender Attorney, Sioux Falls, South Dakota, Attorney for defendant and appellant.

PER CURIAM.

[¶ 1.] Wendy Phair appeals her conviction for grand theft by deception. We affirm.

### FACTS

[¶ 2.] In early 2001, Phair's daughter was looking for a used car to buy, but was unable to obtain a loan without a co-signer. Thus, on April 16, both Phair and her daughter went to First Federal Savings Bank in Sioux Falls where they obtained a loan of $4,925 for the daughter's purchase of a car she had found. As part of the loan process, bank personnel explained to both Phair and her daughter what a lien was and that they would be required to give the bank a lien against the car purchased by the daughter. Because Phair was a co-signer on the note, she was also listed as a co-owner on the application for

a vehicle title completed in connection with the loan documents.

[¶ 3.] Due to a mistake committed by the South Dakota Department of Revenue, the vehicle title mailed to Phair's home failed to note First Federal Savings Bank's lien on the vehicle purchased by Phair's daughter. Thus, on July 16, 2001, Phair was able to use the title as collateral to obtain a short term loan of $450 from the North American Title Loan Company in Sioux Falls (North American). Phair paid that loan off plus interest on July 23 and obtained a new loan that same day in the amount of $1,000, again using the title to her daughter's vehicle as collateral. When taking out each of these loans, Phair asserted to North American's representatives that there were *no* liens on the vehicle. North American's manager later testified that North American would not have approved a title loan if there were prior liens against the vehicle.

[¶ 4.] After these events were reported to law enforcement, Phair was charged with one count of grand theft by deception in connection with the $1,000 loan from North American. The charge was filed pursuant to SDCL 22–30A–1, 22–30A–3(4) & 22–30A–17. SDCL 22–30A–1 provides: "Any person who takes, or exercises control over, property of another with intent to deprive him of it, is guilty of theft." SDCL 22–30A–3(4) provides:

Any person who obtains property of another by deception is guilty of theft. A person deceives if with intent to defraud he:

\* \* \*

(4) Fails to disclose a known lien, adverse claim or other legal impediment to the enjoyment of property which he transfers or encumbers in consideration for property he obtains, whether such impediment is or

is not valid, or is or is not a matter of official record.

The term "deceive" does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive reasonable persons.

SDCL 22–30A–17 provides:

Theft is grand theft, if:

(1) The value of the property stolen exceeds five hundred dollars;

\* \* \*

Theft in all other cases is petty theft. Grand theft is a Class 4 felony.

[¶ 5.] Phair's jury trial was on August 27, 2003. During trial, Phair was precluded from presenting evidence that she had made some payments on the $1,000 loan from North American. At the close of trial, the jury returned a guilty verdict. Phair was sentenced to eighteen months in the penitentiary suspended on various conditions including forty-five days confinement in the county jail and two years of probation. Phair appeals.

### ISSUE ONE

[¶ 6.] **Did the trial court abuse its discretion in excluding defense evidence of Phair's payments on the loan from North American?**

[¶ 7.] Phair argues that the trial court abused its discretion in refusing to admit evidence that she made some payments on the $1,000 loan that she obtained from North American. Prior to addressing the merits of this issue, it is useful to consider the background of the offense with which she was charged. Theft by deception is a codification of the common law offense of theft by false pretenses. *See* 35 CJS *False Pretenses* § 3 (1999)(theft by deception is statutory successor to theft by false pretenses). The gravamen of the offense is obtaining the

property of another by purposely creating a false impression. *See State v. Rodgers*, 230 N.J.Super. 593, 554 A.2d 866, 870 (N.J.Super.Ct.App.Div.1989). The charge has been employed in various jurisdictions to prosecute individuals who have obtained loans based upon false information. *See Morris v. State*, 54 Fla. 80, 45 So. 456 (1907) (party who falsely represents he owns property he mortgages to secure a loan can be convicted of obtaining property by false pretenses); *Com. v. Lewis*, 48 Mass.App.Ct. 343, 720 N.E.2d 818 (1999) (loan transaction may result in larceny by false pretenses where funds are obtained by false pretense irrespective of intent to repay or actual repayment); *State v. Whitledge*, 269 S.W.2d 748 (Mo.1954) (obtaining property under false pretenses occurred where, through false representations, defendant received a loan draft and endorsed it); *Rodgers, supra* (obtaining loan based upon misrepresentation as to status of lien on real estate pledged as collateral constituted theft by deception); *State v. Cronin*, 299 N.C. 229, 262 S.E.2d 277 (N.C.1980) (crime of obtaining property by false pretense is committed when one obtains a loan by falsely representing the nature of the security given); *State v. Banks*, 24 N.C.App. 604, 211 S.E.2d 860 (N.C.Ct.App. 1975) (false representation that land is free of encumbrances when made to obtain a loan may be subject matter of offense of obtaining property by false pretenses).

■ [¶ 8.] South Dakota's theft by deception statute contains an intent to defraud element. *See* SDCL 22–30A–3. Successful prosecution requires proof that the defendant obtained the property of another by deception which is defined as acting "with intent to defraud[.]" *Id.* Phair concedes that the loan payments she made to North American were inadmissible as a defense to the theft by deception charge, but argues that her payments should have been admitted as evidence of her lack of intent to defraud.

[¶ 9.] There is limited authority on the admissibility of evidence of repayment as bearing on the intent element in prosecutions for theft by deception or false pretenses. As set forth in C.L. Feinstock, Annotation, *Admissibility, in Prosecution for Obtaining Money or Property by Fraud or False Pretenses, of Evidence of Subsequent Payments Made by Accused to Victim*, 10 ALR3d 572, § 4 (1966–2004):

> Although there is limited authority considering the question of the admissibility of subsequent payments as evidence of lack of intent to defraud, courts which have been confronted with this problem have permitted such evidence to be introduced where its purpose was not to demonstrate restitution or reimbursement to the victim, but instead, to show that there was no actual intent to defraud. Such courts, although for the most part recognizing the general rule that restoration is not a defense to a criminal charge, hold that such evidence is admissible in order to aid the jury in determining whether the defendant did in fact act in good faith.

However, in *State v. Latendresse*, 459 N.W.2d 234 (N.D.1990), the North Dakota Supreme Court held that evidence of restitution had no bearing on a criminal prosecution for writing a bad check. More closely on point, in *Lewis*, 720 N.E.2d at 822, n. 3, the Massachusetts Appeals Court specifically noted that a loan transaction may result in the crime of larceny by false pretenses where loan funds are obtained by a false pretense irrespective of the defendant's intent to repay or actual repayment of the loan.

[¶ 10.] The lack of clear authority on the admissibility of evidence of repayment in theft by deception cases is resolved in

South Dakota by the specific language of SDCL 22–30A–10.1:

> If a person, who has been accused of theft, restores or returns the property allegedly appropriated before an indictment or information is laid before a magistrate, such fact may be considered in mitigation of punishment. The restoration or return of the property is not a defense *nor may it be considered by the finder of fact.* (emphasis added).

The plain language of this statute clearly excludes evidence of restoration or repayment from being considered by the finder of fact in theft prosecutions. There are no exceptions. A good rationale for application of this strict rule of exclusion in loan fraud cases is provided by *United States v. Karro*, 257 F.3d 112, 118 (2dCir.2001) where the court observed that sufficient intent to inflict harm or defraud:

> can be found from the intentional withholding of information from a lender which lowers the value of the transaction due to the lender's lack of information pertinent to the accurate assessment of the risk it faces and the propriety of extending credit to that particular individual, and because of the increased expense and difficulty of any necessary bill collection efforts. Because this intent is sufficient, it is irrelevant whether the borrower intended in good faith to repay the loan.

"It is also irrelevant whether such a defendant does in fact pay back the loan[.]" *United States v. Rossomando*, 144 F.3d 197, 201 n. 4 (2dCir.1998).

■ [¶ 11.] "Decisions to admit or refuse evidence are reviewed under the abuse of discretion standard." *State v. Faulks*, 2001 SD 115, ¶ 18, 633 N.W.2d 613, 619. Based upon the foregoing authorities and, primarily, the plain language of SDCL 22–30A–10.1, the trial court committed no abuse of discretion in refusing to admit evidence of Phair's payments on the $1,000 loan she obtained from North American.

■ [¶ 12.] As part of her argument under this issue, Phair also challenges the trial court's admission of testimony from First Federal Savings Bank personnel (*i.e.*, the first lender) concerning the repossession of her daughter's car. However, the reference to repossession was an isolated comment by the loan officer that was unsolicited by the State. The comment was made during the loan officer's testimony concerning some admissions Phair had made at a meeting relevant to her intent when she obtained the second and third loans on the daughter's vehicle. Phair's counsel objected and the trial court immediately admonished the jury to "forget" the testimony and that, "[w]hat happened to the car is totally immaterial to this proceeding and should not be considered by the jury in any fashion." Phair's counsel failed to make an immediate mistrial motion. At the close of the State's case, she made general objections that the court's admonishment was insufficient to cure the loan officer's testimony and contended that it would be improperly considered by the jury. Viewing counsel's objections as a mistrial motion, the court ruled:

> [I]t's my conclusion and decision that I think the person misspoke. I don't think he intentionally threw it into the trial for the purposes of gaining an advantage. I'm sure he was instructed not to mention it. As soon as it was mentioned that the checks made by the defense, I instructed the jury to disregard the testimony, told the jury it had no consideration for any verdict in this case, or any decision the jury might reach in this case. And for those reasons, the motion for a mistrial is denied.

[¶ 13.] The standards for reviewing the denial of a mistrial motion are well settled:

Trial courts have considerable discretion not only in granting or denying a mistrial but also in determining the prejudicial effect of a witness' statements. Only when this discretion is clearly abused will this court overturn the trial court's decision.

To justify the granting of a mistrial, an actual showing of prejudice must exist. Prejudicial error for purposes of determining whether error constitutes grounds for mistrial is error 'which in all probability must have produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it.'

*State v. Anderson,* 1996 SD 46, ¶ 21, 546 N.W.2d 395, 401 (quoting *State v. Myers,* 464 N.W.2d 608, 609–10 (S.D.1990)). A witness' inadvertent comment on an excluded matter does not automatically result in a mistrial absent a showing of actual prejudice by the defendant. *See e.g. id.* Here, counsel demonstrated no particular prejudice and the trial court found its instructions adequate to remedy the inadvertent testimony. Thus, we find no abuse of discretion in its denial of the mistrial motion.

## ISSUE TWO

[¶ 14.] **Did the trial court err in denying Phair's motion for a judgment of acquittal?**

[¶ 15.] Phair argues that the trial court abused its discretion in denying her motions for a judgment of acquittal at the close of the state's case and after presentation of all the evidence. "The standard of review for denial of a motion for judgment of acquittal is whether the 'evidence was sufficient to sustain the conviction[ ].'" *State v. Downing,* 2002 SD 148, ¶ 22, 654

N.W.2d 793, 800 (quoting *State v. Verhoef,* 2001 SD 58, ¶ 22, 627 N.W.2d 437, 442).

[¶ 16.] Based upon a recitation of the evidence in the record favorable to her position, Phair contends the evidence was insufficient because it failed to establish her intent to defraud in the loan transaction with North American. In that regard, she mentions representations she made during the loan transaction that were truthful and accurate. Phair also relies on her trial defense that, because her name was on the vehicle title, she thought she had the authority to use it to obtain the loan from North American. However, in reviewing rulings on acquittal motions, this Court does not look to the evidence favorable to the appellant.

"When reviewing sufficiency of the evidence, this [C]ourt, considers the evidence in a light most favorable to the verdict." A guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt." "We do not resolve conflicts in the evidence, pass on the credibility of the witnesses, determine the plausibility of an explanation, or weigh the evidence."

*Id.*

[¶ 17.] Here, in addition to the evidence referenced by Phair, the record also shows that, when she and her daughter obtained the initial vehicle loan, First Federal Savings Bank's personnel specifically explained what a lien was and that they would be required to give the bank a lien against the car. The record further shows that, notwithstanding that information, Phair went to North American on not just one, but two subsequent occasions and obtained loans by affirmatively representing that there were *no* liens on the vehicle. Based upon this evidence, the jury could

have found that Phair acted with intent to defraud by intentionally misrepresenting the lien status of the vehicle. The jury obviously accepted that theory and convicted Phair of the theft offense. This was fully within the jury's province and, accordingly, the trial court did not err in denying Phair's motion for a judgment of acquittal.

[¶ 18.] Affirmed.

[¶ 19.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.